NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-917
25-P-918
25-P-921

J.O.N.

vs.

K.N. (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

We have before us three appeals from the issuance on May 12, 2025, after two-party hearings, of orders obtained under G. L. c. 209A.  Each involves the same defendant, K.N., who has appealed.  The plaintiff in each case is a different family member of K.N.  The cases are not consolidated, but they were tried together, and because they present several identical issues, we decide them by way of this single decision.  We address first the legal questions that have been raised by the defendant applicable to all three orders, then turn to the merits of the orders obtained by the individual plaintiffs.

_____

[1] K.N.-O. vs. K.N.; D.N. vs. K.N.

1.  Claims relevant to all three appeals.  The defendant argues first that the cases in the trial court were converted mid-proceeding from ones under G. L. c. 258E, which has one standard for issuance of a protective order, to ones under G. L. c. 209A, which has another, in violation of the provisions of both statutes and principles of due process.

The plaintiffs originally brought their claims under G. L. c. 209A, but when the cases were first heard, a District Court judge mistakenly concluded that c. 209A was inapplicable, and that the plaintiffs could proceed only under c. 258E.  At the hearing, originally a 258E hearing, the judge noted the error. The plaintiffs then refiled their applications mid-hearing under 209A, after which the hearing proceeded.  Assuming without deciding, however, that this conversion violated the statutes or due process, the defendant, represented by counsel, did not raise either of these objections before the trial court.  We may not address arguments that were not raised below; they are waived.  See E.H.S. v. K.E.S., 424 Mass. 1011, 1011-1012 (1997).

The defendant next argues that he was denied reasonable accommodation required by State and Federal statutes.  There is a dispute between the parties whether in fact the defendant had, at the relevant time, been diagnosed with a condition that would require reasonable accommodation be given him under the relevant

2

and applicable statutes.  We need not decide that issue.  We will again assume, without deciding, that the defendant was entitled to reasonable accommodation.

In this case, the only accommodation sought by the defendant in the trial court was a continuance of the first hearing to allow him time to obtain counsel.  That continuance was granted.  And indeed, at the next hearing, before a different District Court judge (trial judge), the defendant in fact was represented by counsel.  As no other request for reasonable accommodation was made, we see no error.

The defendant next argues that the three cases should not have been heard together in the serial fashion utilized by the trial judge.  Although we can imagine a case in which a procedure like this could lead to a risk of the evidence in one case creating impermissible prejudice in another, having gone through the transcript in this case with care, we see no risk of prejudice here even if the procedure were error.  If the cases had been tried separately, the plaintiffs could simply have called each other to provide evidence in support of the claims that each was reasonably in fear of imminent serious physical harm.

2.  Claims relevant to individual appeals.  Turning to the orders issued on the applications of the individual plaintiffs,

3

the defendant argues that the evidence was insufficient in each case to support issuance of the order.  That is, that there was insufficient evidence that any of the three plaintiffs was in reasonable fear of imminent, serious physical harm.  See Iamele v. Asselin, 444 Mass. 734, 734-735 (2005).

Sufficiency of the evidence is a legal question, see Howard v. Burlington, 399 Mass. 585, 588 (1987), citing Smith v. Board of Appeals of Brookline, 366 Mass. 197, 200 (1974), but we must defer to facts found by the trial judge and may reverse them only if they are clearly erroneous, because only the trial judge, and not the members of this court, saw the witnesses testify.  See Matter of A.M., 94 Mass. App. Ct. 399, 401 (2018).  We must also defer to the judge's assessment of the credibility of witnesses.  Id.  With these rules of deference in mind, we conclude that in each case there was sufficient evidence to support the judge's conclusion with respect to the reasonable fear of each plaintiff.

The events that gave rise to the three cases derive from bitterly estranged relations between the defendant and his three family member plaintiffs: his father, J.O.N.; his brother, D.N.; and his sister, K.N.-O.  The intensity of the defendant's evident anger at the plaintiffs appears to stem, at least in part, from his feeling that he had been mistreated by them.

4

Although it appears that he felt mistreated in a number of ways, the specific intensity the judge could have found was a result of the defendant's belief that his father had cut him out of his will, with -- as the defendant believed -- the assistance or encouragement of his brother and sister.

To begin with, the judge could have found, as the father testified, that the will had not ever been changed, and that it continued to provide for an equal division of his estate between the three children. In light of this, the judge could have found the defendant's behavior lacked rational explanation. Specifically, there was evidence of an escalating number of unwanted text and e-mail messages to each of the plaintiffs, with increasing language reflecting disgust and derision, as well as threatening language growing in frequency and intensity.

Although the defendant argues that the specific threats he made were only to file legal actions, they were threats nonetheless, and while the defendant asserts that there had never been any physical violence perpetrated by him described in the record, "for the plaintiff[s'] fear of imminent serious physical harm to be reasonable, it is not necessary that there be a history -- or even a specific incident of physical violence." Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 665 (2020). Rather, the court must consider the totality of the

circumstances and "examine the words and conduct in the context of the entire history of the parties' hostile relationship" (quotations and citation omitted).  Id.

a.  Order protecting J.O.N.  With respect to the father, J.O.N., there was evidence that he (and the defendant's brother, D.N.) received a message from the defendant, who boxes, stating that he wanted to "walk all of you down the ring."  Although this might have been a metaphor, the judge was entitled to draw the inference that the defendant was saying to the father and the brother that he wanted to do them physical harm.

There was evidence that the defendant told the father that he would have his dog defecate on the father's lawn.  The father testified that the defendant had "done things that kind of scared me a couple of times."  He testified that the defendant had appeared at his home uninvited and "flown into a rage, and he would start screaming and yelling at me.  And anytime I tried to talk to him he would tell me to shut up."  The father, who was eighty-four years old, also testified that the defendant had previously, and for no reason, put him in a headlock.  Although the father described it as "nonthreatening," he said that it was "kind of scary because he's awful strong."  The judge was entitled to view this act as physical violence intended to

6

intimidate the father and to put him in fear of serious, physical harm.

There was further evidence of an irrational belief on the part of the defendant that the father was somehow holding the defendant's credit card hostage -- the address on the account of which the defendant, in fact, had never changed from the father's address. This evidence and evidence of escalating and irrational verbal abuse and denigration, threats, and the headlock incident, together with the rest of the evidence in the record, suffice adequately to support the judge's determination that the father was in reasonable fear of imminent, serious physical harm.

b. Order protecting K.N.-O. As to the sister, she testified that the defendant is "increasingly angry, agitated, intimidating, paranoid." She testified that the defendant told her, "See you soon, you may not see me coming." He also told her, "I'm going to make your life worse than you've made mine"; that she had to "respond now or you'll regret it"; and that "your day of reckoning is coming, you're going to pay."

The defendant left his sister disturbing messages, including one that said to the sister, who had stomach cancer, that he "Just hope[d] you're up with loose stool and very bad stomach pain." The defendant texted the plaintiffs, "You are

7

all guna be haunted by me the rest of ur days," and used that spelling repeatedly in that text chain.  The sister testified that the defendant changed the spelling of "gonna" in his text to "guna," which the defendant dismisses, but which the judge could have concluded was an intentional change intended to imply something about firearms.  She testified that she took that as a threat, and it placed her in fear.

The defendant sent the sister forty-eight e-mail messages on her birthday.  And she heard a telephone call between her father and the defendant that she found disturbing because of the defendant's tone of voice and his telling the father to "shut up."  She testified that starting in April 2025, "[I]t was just constant, constant email threats, you know, voicemail threats; respond back now. . .  I've got him calling my work." She also testified that she was not comfortable leaving her doors at her house unlocked because of the defendant.

Again, this evidence supported the judge's conclusion that the sister was subjectively in fear of imminent, serious physical harm.  And, all the evidence before the judge supported his conclusion that that fear was reasonable.

c.  Order protecting D.N.  Finally, as described above, the brother received the "walk all of you down the ring" e-mail message, and messages with the "guna" spelling of "gonna."  The

8

judge was entitled to believe the brother's testimony that the defendant is "very into these strange hidden messages and references." The brother testified that the defendant had contacted the brother's ex-wife, panicking her; that the brother had contacted the police as a result of the communications from the defendant; and that the defendant had called him from multiple telephone numbers after the brother had blocked the defendant's number on the brother's phone. The brother testified that he received thirty communications from the defendant in the span of one week, and that he felt threatened by phrases used by the defendant, including, "You will pay for this," "You will not get away with this," and "Test me bitch." The brother took the "Test me bitch" statement, along with the "walk you down the ring" threat, as a challenge to a physical fight.

Again, given all the facts and circumstances, including the inferences the judge could have drawn from some of the statements made by the defendant to the brother, the judge's finding that the brother was reasonably in fear of imminent,

9

serious physical harm was also adequately supported by the record.

Orders dated May 12, 2025, affirmed.

By the Court (Rubin, Massing & Toone, JJ.[2]),

Clerk

Entered:  July 8, 2026.

---

[2] The panelists are listed in order of seniority.